IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ARVIND THAPAR,<br><br>Plaintiff,<br><br>vs.<br><br>MOODY'S ANALYTICS SOLUTIONS, LLC, and MOODY'S ANALYTICS, INC.,<br><br>Defendants. | 8:15CV324<br><br>ORDER<br>and<br>FINDINGS AND RECOMMENDATION |

This matter is before the court on the plaintiff's Motion to Remand to State Court (Filing No. 11). The plaintiff filed a brief (Filing No. 12) in support of the motion. The defendants filed a brief (Filing No. 17) with evidence attached (Filing No. 17-1) in opposition. The plaintiff filed a brief (Filing No. 18) and an index of evidence (Filing No. 19) in reply. The plaintiff filed a motion (Filing No. 20) for leave to cite supplemental authority, which the court granted (Filing No. 21) and considered instanter. The defendants filed a response (Filing No. 24) to the plaintiff's supplemental authority. The plaintiff filed a reply (Filing No. 27) to the defendants' supplemental response. The court must determine whether the plaintiff's claim for severance benefits under an individual employee agreement with the defendants is preempted by the Employee Retirement Income Security Act of 1974 (ERISA).

BACKGROUND

This case arises out of the employment relationship between the parties. **See** Filing No. 1-1 - Complaint. On March 15, 2014, the plaintiff accepted an offer of employment from WebEquity Solutions, LLC (WebEquity) to work as its Chief Technology Officer. *Id.* at ¶ 5. The plaintiff's salary, benefits, and bonus and commission calculations for his employment with WebEquity were memorialized in an offer of employment letter (Offer Letter) sent to the plaintiff on March 15, 2014. *Id.* at Ex. 1A - Offer Letter. The Offer Letter provides the plaintiff with certain severance benefits:

> In the event you are terminated "not for cause", the company will provide you a six month severance based on your annual salary. The six month severance clause shall survive a change of control event. In the event of a change of control within one your of your date of hire and you are not retained or are laid off/terminated by the buyer without cause within the first twelve months after the change in control, you will be awarded an additional six months of severance based on your annual salary.

*Id.* at 2. The plaintiff accepted the Offer Letter and commenced employment with WebEquity on or about April 28, 2014. **See** Filing No. 1-1 - Complaint ¶ 7.

On July 17, 2014, Moody's Analytics, Inc., (Moody's) acquired WebEquity. **See** Filing No. 1 - Notice of Removal at Ex. 2: Greenaway Decl. ¶ 3. On the same date, Moody's sent the plaintiff two letters: a Retention Bonus Letter and a Continued Employment Letter. The Retention Bonus Letter offered the plaintiff a one-time lump sum $100,000 retention bonus if he remained an active Moody's employee in good standing through December 31, 2015. **See** Filing No. 1 - Notice of Removal at Ex. 1B: Retention Bonus Letter. The Retention Bonus Letter further provided:

> You will also be eligible to receive a pro-rated Retention Bonus for the period of your active employment with Moody's in the event that Moody's eliminates your position for any reason other than termination for Cause as defined by Moody's Career Transition Plan. In that event, the pro-rated Retention Bonus will be paid to you promptly following your termination of employment, but in no event later than March 15 of the year following your year of termination, subject to your execution of a release of claims acceptable to Moody's. You will be ineligible for a Retention Bonus, in whole or in part, if you resign from Moody's or if your employment is terminated for Cause. . . . Your Retention Bonus is in addition to your compensation and any other benefits for which you may be eligible either during your employment or upon termination.

*Id.*

The Continued Employment Letter stated the terms and conditions of the March 15, 2014, Offer Letter will continue to govern the plaintiff's employment "except as amended by this letter." **See** Filing No. 1 - Notice of Removal at Ex. 2A: Continued Employment Letter p. 1. The Continued Employment Letter states, "You understand and agree that the severance terms set forth in the Offer Letter are no longer of any

2

force or effect and that your eligibility for severance shall be subject to the terms and conditions of the Moody's Corporation's [sic] Career Transition Plan." *Id.* According to Moody's Corporation Career Transition Plan (the Plan) referenced in the Continued Employment Letter, the Plan's purpose is to provide eligible Moody's employees with severance benefits if the employee is terminated under the terms and conditions of the Plan. **See** Filing No. 1 - Notice of Removal at Ex. 2B: Moody's Corporation Career Transition Plan p. 1. The Plan states it "is designed to be an 'employee welfare benefit plan,' as defined in Section 3(1) of [ERISA], and is governed by ERISA." *Id.*

On December 17, 2014, Moody's management advised the plaintiff his new title would be Senior Director, Product Strategy, which would diminish his incentive compensation opportunity. **See** Filing No. 1-1 - Complaint ¶ 15. On January 6, 2015, the plaintiff met with his supervisor to express disappointment regarding the new terms of the plaintiff's employment and inquire about the possibility of mutual separation benefits under the Plan. *Id.* ¶ 18. Moody's determined the plaintiff resigned his employment during his January 6, 2015, conversation with his supervisor. *Id.* ¶ 28. Moody's offered to pay the plaintiff one month of severance in exchange for signing a release of claims. *Id.* The plaintiff repeatedly stated to Moody's management he did not resign his employment and was only inquiring about benefits. *Id.* ¶¶ 23-24, 26-28. The plaintiff alleges his employment was involuntarily terminated without cause. *Id.* ¶ 31. On February 18, 2015, the plaintiff alleges he emailed Moody's demanding payment of severance benefits under the Offer Letter and a pro-rated retention bonus under the Retention Bonus Letter. *Id.* ¶ 32. The plaintiff alleges the defendants have not paid him severance or a bonus. *Id.* ¶ 34.

The plaintiff filed a complaint in Douglas County District Court on July 21, 2015. **See** Filing No. 1-1 - Complaint. The plaintiff alleges three causes of action: (1) violation of the Nebraska Wage Payment and Collection Act (Count I); (2) breach of contract for failure to pay a pro-rated retention bonus under the Retention Bonus Letter (Count II); and (3) breach of contract for failure to pay severance pay under the Offer Letter (Count III). *Id.* The defendants removed this suit to federal court on September 1, 2015, asserting this court has original jurisdiction because the plaintiff seeks benefits from a plan governed by ERISA. **See** Filing No. 1 - Notice of Removal. The defendants argue

the plaintiff's state-law claim for breach of contract for failure to pay severance benefits under the Offer Letter (Count III) is completely preempted by ERISA because the plaintiff's only colorable claim for severance benefits falls under the Plan, which is governed by ERISA.  **See** Filing No. 17 - Response p. 2-4.

On October 9, 2015, the plaintiff moved to remand the action.  **See** Filing No. 11. The plaintiff argues he does not seek benefits under the Plan; rather, he seeks severance benefits under the Offer Letter, which is an individually-negotiated employment agreement that does not implicate ERISA.  **See** Filing No. 12 - Brief p. 7. For the reasons set forth below, the undersigned magistrate judge recommends the plaintiff's motion to remand be granted.[1]

## ANALYSIS

### A.  Motion to Remand

"A defendant may remove a state law claim to federal court only if the action originally could have been filed there."  ***Baker v. Martin Marietta Materials, Inc.***, 745 F.3d 919, 923 (8th Cir. 2014).  "The burden of establishing that a cause of action lies within the limited jurisdiction of the federal courts is on the party asserting jurisdiction."

---

[1] The court is entering this Findings and Recommendation in this matter in light of the split in court decisions over whether a magistrate judge has authority to rule on a motion to remand.  **Compare** ***Flam v. Flam***, 788 F.3d 1043, 1047 (9th Cir. 2015) (holding a remand order is a dispositive motion and cannot be issued by a magistrate judge), ***Vogel v. U.S. Office Prods. Co.***, 258 F.3d 509, 517 (6th Cir. 2001) (finding "remand motions are dispositive and, as such, can only be entered by district courts"), ***Williams v. Beemiller, Inc.***, 527 F.3d 259 (2d Cir. 2008), ***Stefanik v. City of Holyoke***, 597 F. Supp. 2d 184, 185 (D. Mass. 2009), and ***Johnson v. Tyson Fresh Meats, Inc.***, No. C-06-1002, 2006 WL 1004970, at *1 (N.D. Iowa Apr. 17, 2006), **with** ***White v. State Farm Mut. Auto. Ins. Co.***, 153 F.R.D. 639 (D. Neb. 1993) (concluding remand of a case to the state court was not an Article III function and could be ordered by a magistrate judge).  In ***Vogel***, the court concluded:
> [W]e apply a functional equivalency test to see if a particular motion has the same practical effect as a recognized dispositive motion.  Applying that test, . . . we too find that a remand order is the functional equivalent of an order to dismiss.  The practical effect of remand orders and orders to dismiss can be the same; in both, cases are permitted to proceed in state rather than federal court.

***Vogel***, 258 F.3d at 517.  **Accord** ***First Union Mortg. Corp. v. Smith***, 229 F.3d 992 (10th Cir. 2000); ***In re U.S. Healthcare***, 159 F.3d 142, 145 (3d Cir. 1998); **see also** ***Meier v. Premier Wine & Spirits, Inc.***, 371 F. Supp. 2d 239, 241-42 (E.D. N.Y. 2005) (noting that "[m]ost district courts to have considered this issue have found remand to be within a magistrate judge's authority under 28 U.S.C. 636(b)(1)(A).  On the other hand, every appellate court that has weighed the issue has determined a remand to be the functional equivalent of a dispositive order, and therefore beyond a magistrate judge's authority.") (collecting cases).  The undersigned magistrate judge concludes a recommendation is the most appropriate course of action in this matter.

***Arkansas Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.***, 551 F.3d 812, 816 (8th Cir. 2009). Federal courts are to resolve all doubts as to the propriety of exercising federal jurisdiction in favor of remand. ***Dahl v. R.J. Reynolds Tobacco Co.***, 478 F.3d 965, 968 (8th Cir. 2007).

"Removal based on federal question jurisdiction is usually governed by the well-pleaded complaint rule." ***Phipps v. F.D.I.C.***, 417 F.3d 1006, 1010 (8th Cir. 2005) (internal quotation omitted). The well-pleaded complaint rule "provides that federal jurisdiction may be invoked only where a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* "Under an exception or corollary to the well-pleaded complaint rule, however, a state-law claim may be removed to federal court when a federal statute wholly displaces the state-law cause of action, resulting in complete preemption." ***Griffioen v. Cedar Rapids & Iowa City Ry. Co.***, 785 F.3d 1182, 1188 (8th Cir. 2015) (internal quotations omitted). "When a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed." ***Aetna Health Inc. v. Davila***, 542 U.S. 200, 207 (2004) (internal quotation omitted). "This is so because when the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. ERISA is one of these statutes." *Id.* at 207-08. Therefore, if an individual could have brought his claim under ERISA's civil enforcement provision, and no other independent legal duty is implicated by a defendant's actions, "the individual's cause of action is completely pre-empted by ERISA." *Id.* at 210.

The plaintiff argues his claim for severance benefits does not implicate ERISA because he seeks payment under the Offer Letter, which is a free-standing, single-employee contract. **See** Filing No. 12 - Brief p. 8. The plaintiff relies on ***Dakota, Minn. & E. R.R. Corp. v. Schieffer***, 648 F.3d 935 (8th Cir. 2011) (***Dakota I***), and its subsequent appeal following remand, ***Dakota, Minn. & E. R.R. Corp. v. Schieffer***, 711 F.3d 878, 881 (8th Cir. 2013) (***Dakota II***), to support his position that a claim for severance benefits under an independent contract is not preempted by ERISA. In that action, the president and CEO of the plaintiff corporation entered into an employment agreement in anticipation of the corporation's change of control. ***Dakota I***, 648 F.3d at

5

936. The employment agreement provided for certain benefits, including severance benefits, to the CEO in the event he was terminated without cause or resigned for good reason. *Id.* The CEO was later terminated without cause. *Id.* After disputes arose as to the amounts the plaintiff corporation owed the CEO, he filed a demand for arbitration under the provisions of the employment agreement. *Id.* The plaintiff corporation commenced an action in federal court to enjoin the arbitration as preempted by ERISA. *Id.* The district court dismissed the action, concluding the employment agreement was not an ERISA employee benefit plan. *Id.* On appeal to the Eighth Circuit, the court agreed, stating, "Considering ERISA's statutory language, purpose, and historical context, we conclude that an individual contract providing severance benefits to a single executive employee is not an ERISA employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1)." *Id.* at 938. The Eighth Circuit remanded, however, for the district court to determine whether certain of the CEO's other demands were for payment under ERISA plans or whether they were "demands under a free-standing single-employee contract that simply pegged [the corporation's] payment obligations to amounts that would have been due under ERISA plans," the latter of which would not be preempted. *Id.* at 939-40. On remand, the district court dismissed the case for lack of jurisdiction, concluding all the CEO's demands for payment of employee benefits arose under a free-standing single-employee contract that references an ERISA plan but did not seek payment of benefits due under an ERISA plan. *Dakota II*, 711 F.3d at 880. The Eighth Circuit affirmed, agreeing the benefits sought by the CEO were not claims for benefits due under an ERISA plan. *Id.* at 882. **See also *Eide v. Grey Fox Technical Servs. Corp.***, 329 F.3d 600, 605 (8th Cir. 2003) (concluding an employer's oral promise to pay a one-time lump sum severance equal to what the employees would have received under the employer's existing ERISA plan constituted a free-standing contract to provide severance benefits not preempted by ERISA).

The plaintiff was granted leave to cite supplemental authority, directing the court's attention to ***The Nebraska Methodist Hosp. v. State Law Enforcement Bargaining Council Employee Health***, No. 8:15CV216, 2015 WL 8328158, at *2 (D. Neb. Dec. 7, 2015), wherein Senior Judge Joseph F. Bataillon remanded an action to state court after concluding the plaintiffs' claims were based on enforcement of rights

6

under separate contracts which required no interpretation of ERISA documents. The plaintiffs were a collection of hospitals, which were participants in the Midlands Choice Preferred Provider Network. *Id.* at *1. The hospitals and Midlands Choice entered into contracts which provided a contracted payment rate for goods and services supplied by the hospitals. *Id.* The hospitals later filed suit in state court for breach of contract, alleging in forty-four instances individual claims were paid at a lower rate than the parties' contracted rate. *Id.* The defendants removed the action to federal court, arguing the hospitals' claims were completely preempted by ERISA because the case concerned entitlement to benefits and interpretation of plan documents. *Id.* In remanding the action to state court, Senior Judge Bataillon concluded the hospitals' complaint raised no allegations regarding improper denial of claims under an ERISA plan. *Id.* "On the contrary, the entire dispute relates to the amount of payment, under a separate and distinct agreement, but not the right to payment. The claims of the hospitals depend on defendants' legal obligations to the hospitals, and not to their plan participants." *Id.* Therefore, the hospitals' claims were not preempted by ERISA. *Id.*

Similar to *Dakota I* and *Nebraska Methodist*, Count III of the plaintiff's Complaint sets forth a contract claim arising from an independent contract between the plaintiff and the defendants. Count III is based on the defendants' alleged failure to pay severance benefits in accordance with the Offer Letter, which is an independent agreement individually negotiated between the plaintiff and the defendants. The plaintiff has not sued for a breach of any ERISA-governed benefit plan obligation, but rather for the enforcement of his own rights under a separate set of contractual duties. When a dispute relates to the amount of payment under a separate and distinct agreement, it is not preempted by ERISA. **Nebraska Methodist**, 2015 WL 8328158, at *2. **See also**, *Dakota I*, 648 F.3d at 938; *Eide*, 329 F.3d at 605. The Offer Letter constitutes an individual contract providing severance benefits to a single executive employee and is not an ERISA employee welfare benefit plan.

The defendants argue the plaintiff's claim for severance benefits is completely preempted because the Offer Letter's provision regarding severance benefits was voided by the July 17, 2014, Continued Employment Letter. **See** Filing No. 17 - Response p. 11-12. Because the Continued Employment Letter provides, "the

7

severance terms set forth in the Offer Letter are no longer of any force or effect and that your eligibility for severance shall be subject to the terms and conditions of the Moody's Corporation's [sic] Career Transition Plan," the defendants assert the plaintiff is limited to seeking severance benefits under the Plan, which is indisputably an ERISA plan. *Id.* The plaintiff counters the defendants' reliance on the Continued Employment Letter is an affirmative defense that does not automatically convert his claim under the Offer Letter into an ERISA action. **See** Filing No. 12 - Brief p 9. The court agrees with the plaintiff. Count III of the plaintiff's complaint sets forth a contract claim arising from a single contract between the plaintiff and the defendants. An individual's cause of action is preempted by ERISA only "where there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. The plaintiff's claim is based on the defendants' alleged failure to pay severance benefits in accordance with the Offer Letter, which is an independent agreement individually executed between the plaintiff and the defendants. The effect of the Continued Employment Letter on the defendants' obligations to the plaintiff under the Offer Letter does not implicate the Plan itself or require any interpretation of Plan documents. Count III of the plaintiff's complaint relates to the defendants' legal obligations to the plaintiff alone, and not to any of the Plan's participants. Therefore, the court concludes the plaintiff's claim for severance benefits under the Offer Letter is not preempted by ERISA. The court recommends the plaintiff's motion to remand be granted.

**B.     Attorney Fees**

The plaintiff requests recovery of attorneys' fees incurred as a result of the removal. **See** Filing No. 12 - Brief p. 11. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C.A. § 1447. An award of attorney's fees is appropriate when the removing party lacked an objectively reasonable basis for seeking removal. ***Martin v. Franklin Capital Corp.***, 546 U.S. 132, 141 (2005). Although the undersigned magistrate judge recommends the defendants' argument ultimately fails, the courts finds the defendant did not lack an objectively reasonably basis for seeking removal. Therefore, the court will not award fees and costs. Upon consideration,

**IT IS RECOMMENDED TO SENIOR JUDGE JOSEPH F. BATAILLON that:**

The plaintiff's Motion to Remand to State Court (Filing No. 11) be granted.

**IT IS ORDERED that**:

The order (Filing No. 14) holding the briefing schedule in abeyance for the defendants' Motion to Dismiss Count III of the Complaint (Filing No. 6) shall remain in effect pending resolution of an objection filed by the defendants.

## ADMONITION

Pursuant to NECivR 72.2 any objection to this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 8th day of February, 2016.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge